# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

STEVE BULLOCK, in his official
capacity as Governor of Montana;

*Plaintiff,*

vs.

UNITED STATES POSTAL
SERVICE; and LOUIS DEJOY, in his
official capacity as Postmaster General

*Defendants.*

Case No. 4:20-cv-00079

The Honorable Brian Morris,
Chief Judge

## PLAINTIFF'S BRIEF IN SUPPORT OF THE
## MOTION FOR A PRELIMINARY INJUNCTION

RAPHAEL GRAYBILL
  Chief Legal Counsel
RYLEE SOMMERS-FLANAGAN
  Deputy Legal Counsel
  Office of the Governor
  P.O. Box 200801
  Helena, MT 59620-0801
  (406) 444-3179

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

I. Introduction ............................................................................................ 1

II. Factual Background .............................................................................. 3

III. Legal Standard....................................................................................... 14

IV. Argument................................................................................................. 15

   A. As DeJoy and the Postal Service have acted unlawfully, Governor Bullock is
      likely to succeed on the merits. ....................................................... 15

   B. Without preliminary relief, Governor Bullock and the State agencies he
      oversees will suffer irreparable injuries. .......................................... 21

   C. The harms that the Governor and State agencies face far outweigh any harm to
      the Postmaster General and Postal Service and a preliminary injunction is in
      the public interest. .......................................................................... 25

V. Conclusion ............................................................................................. 27

Certificate of Compliance ......................................................................... 37

Certificate of Service ................................................................................. 38

# TABLE OF AUTHORITIES

**Cases**

*Alliance for the Wild Rockies v. Cottrell,*
  632 F.3d 1127, 1135 (9th Cir. 2011) ............................................................ 15, 21

*Am. Commercial Lines, LLC v. Ne. Maritime Inst., Inc.,*
  588 F. Supp. 2d 935 (S.D. Ind. 2008) ................................................................ 23

*Amato v. Elicker,*
  No. 20-cv-464, 2020 WL 2542788 (D. Conn. May 19, 2020) ............................. 23

*Buchanan v. U.S. Postal Serv.,*
  508 F.2d 259 (5th Cir. 1975) ....................................................................... 17, 18

*City of Beaver Falls v. Econ. Dev. Admin.,*
  439 F. Supp. 851 (W.D. Pa. 1977) ...................................................................... 23

*Lofton v. Dist. of Columbia,*
  7 F. Supp. 3d 117 (D.D.C. 2013) ........................................................................ 26

*Doe #1 v. Trump,*
  414 F. Supp. 3d 1307 (D. Or. 2019) ................................................................... 15

*Doe by Johanns v. N.Y.C. Dep't of Social Servs.,*
  670 F. Supp. 1145 (S.D.N.Y. 1987) .................................................................... 22

*Greenpeace Found. v. Mineta,*
  122 F. Supp. 1123 (D. Haw. 2000) ..................................................................... 26

*Int'l Bhd. of Teamsters v. Kalitta Air, LLC,*
  No. 15-cv-13527, 2015 WL 6561715 (E.D. Mich. Oct. 30, 2015) ...................... 26

*Islam v. Cuomo,*
  No. 20-cv-2328, 2020 WL 4336393 (E.D.N.Y. July 28, 2020) ........................... 23

*Native Ecosysts. Council v. Marten,*
  No. 18-cv-87-M-DLC, 2018 WL 3178145 (D. Mont. June 27, 2018) ................. 14

*Shane v. Buck,* 658 F. Supp. 908 (D. Utah 1985) ................................................... 18

*Winter v. Natural Res. Def. Council, Inc.,*
  *555* U.S. 7 (2008) ............................................................................ 14

Statutes

39 U.S. C. § 3661 ......................................................................... 16, 17

39 U.S.C. § 101 ....................................................................... 16, 21, 26

Mont. Code Ann. § 10-3-101 ............................................................ 24

Mont. Code Ann. § 10-3-104 ............................................................ 24

Mont. Code Ann. § 10-3-305 ............................................................ 24

Mont. Code Ann. § 13-19-205 ........................................................... 25

Other Authorities

*Concerned postal workers lay blame for delays squarely on recent overhauls,*
  NBC News (Aug. 17, 2020) ............................................................ 5

*Considerations for Election Polling Locations & Voters,*
  CDC.gov (updated June 22, 2020) ................................................ 25

*Crisis Ripples Across Nation as Election Looms,* NY Times (Aug. 18, 2020) ..... 7, 10

*Despite DeJoy's vows to halt changes, serious problems persist, postal workers say,*
  NBC News (Aug. 28, 2020) .................................................. 11, 18, 20

*Directive providing for measures to implement the 2020 November general election*
  *safely* (Aug. 6, 2020) .............................................................. 9, 25

*Equipment Reduction* (May 15, 2020) ............................................. 4, 6

*Here's why the Postal Service wanted to remove hundreds of mail-sorting machines,*
  Wash. Post (Aug. 20, 2020) ........................................................ 6

*How the battle over the US Postal Service is costing veterans dearly,*
  Task & Purpose (Aug. 18, 2020) ................................................ 19

*Internal USPS Documents Outline Plans to Hobble Mail Sorting,*

Motherboard (Aug. 14, 2020) ............................................................. 4, 6

*Internal USPS memo appears to contradict postmaster general's testimony,*
Salon.com (Aug. 21, 2020) ................................................................... 4

*Leaked photos show disassembled USPS machines in Montana,*
NBC Mont. (Aug. 20, 2020)................................................................. 7

Letter from Rickey R. Dean to Mark Dimondstein (June 17, 2020) ......................... 6

*Mandatory Stand-Up Talk: All Employees* (July 10, 2020); Letters from Thomas J.
Marshall to States, *Re: Deadlines for Mailing Ballots* (July 29, 2020) .... 4, 8, 18, 19

*Montana Counties submitting a Mail Ballot plan for the 2020 General Election,*
Secretary of State Corey Stapleton (Sept. 4, 2020).......................................... 9, 25

*More details emerge about dismantled mail equipment in Montana,*
Billings Gazette (Aug. 21, 2020) ........................................................... 7

*Most Americans hopeful COVID-19 will be under control in six months, yet see*
*federal government as making things worse,* Ipsos (Sept. 1, 2020)......................... 8

*PMG addresses restructuring,* Postal Times (Aug. 13, 2020) ..................................... 3

*PMG Expectations & Plan* (July 2020) ........................................................... 4, 5, 18

*Postal Service memos detail 'difficult' changes, including slower mail delivery,*
Wash. Post (July 14, 2020 ........................................................... 4, 5, 18

*Postal Service Slowdowns Cause Dangerous Delays in Medication Delivery,* Nat'l
Pub. Radio (Aug. 25, 2020) ................................................................... 8

*Postmaster General Louis DeJoy Statement,* USPS, (Aug. 18, 2020) ................. 7, 10

*Postmaster General Louis DeJoy's Opening Remarks for the USPS Board of*
*Governors Aug. 7 Meeting* (Aug. 7, 2020) ........................................................... 4

*Protecting the Timely Delivery of Mail, Medicine & Mail-in Ballots,*
U.S. House Comm. on Oversight & Reform (Aug. 24, 2020)..................... 5, 6, 20

*Service Performance of Election & Political Mail During the 2018 Midterm & Special Elections*, USPS Office of the Inspector General, at 1 (Nov. 4, 2019) ...... 9

*Some SC Businesses Say They are Experiencing Delays Because of US Postal Service Changes*, The Post & Courier, (Aug. 14, 2020) ........................................ 19

*Tech Adoption Climbs Among Older Adults* (May 17, 2017) ................................. 14

*The Post Office Is Deactivating Mail Sorting Machines Ahead of the Election*, Motherboard (Aug. 13, 2020) ................................................................................. 4

*The Post Office's Great Mail Slowdown Is Hurting Small Businesses*, Motherboard (Aug. 4, 2020) .................................................................................. 11

*Trump says Postal Service needs money for mail-in voting, but he'll keep blocking funding*, Wash. Post (Aug. 12, 2020) .................................................................... 10

*USPS Delivery Delays Leave 82-year-old Texas Man Without Heart Medication for a Week*, WBNS (Aug. 17, 2020) ........................................................................... 19

*USPS Warns Employees Not to Speak to Press*, Motherboard (Aug. 20, 2020) ..... 11

*USPS workers concerned agency isn't doing enough to protect essential workers from COVID-19*, ABC7 Chicago (Aug. 14, 2020) ................................................. 5

*Utah Diabetic Waiting for More Than a Week For Supplies By Mail*, KUTV, (Aug. 17, 2020) ............................................................................................................... 19

*What's wrong with the mail*, Vox (Aug. 18, 2020) ..................................................... 9

**Regulations**
39 C.F.R. § 1.1 .......................................................................................................... 16

39 C.F.R. § 3020.112 ................................................................................................. 17


**Montana Constitution**
Mont. Const. art. VI § 4 ........................................................................................... 24

Mont. Const. art. VI § 13 ......................................................................................... 24

# I.  INTRODUCTION

Plaintiff Steve Bullock, Governor of the State of Montana, on behalf of himself in his official capacity and the state agencies he oversees, respectfully seeks immediate relief to avert irreparable harm arising from policy changes made recently by the Postmaster General and within the United States Postal Service. These policy changes, made *ultra vires* and in defiance of statutorily required procedures, have caused unprecedented delivery delays from an institution that has provided nearly 250 years of consistent, reliable service. To delay the mail is to threaten the safety, wellbeing, and livelihoods of individuals nationwide who rely on state and federal government services. To do so in the midst of a global pandemic is calamitous.

In mid-August, the Montana news media reported that 68 mailboxes in cities across the state were slated for removal. Boxes in Bozeman, Glendive, Helena, Lewistown, Livingston, Manhattan, and Shelby were actually removed. Less than a week later, reporters discovered that sorting machines—including one of only two AFCS100 machines in Missoula capable of processing 30,000 pieces of mail per hour—were also being destroyed. Soon it became clear that machines in Great Falls and Billings had also been decommissioned.

Montana's elected officials condemned these actions and the Postal Service claimed that additional planned mailbox removals would be placed on hold. But these assurances ring hollow. Actions first taken without warning, even while criticism over

other instances of unlawful policymaking in July reverberated nationwide, must be reversed and Defendants must be held to their promises not to continue engaging in unlawful *ultra vires* actions and making procedurally unauthorized policy changes.

Montanans rely on the Postal Service. Sidney boasts the longest delivery mail route in the nation, requiring its letter carrier to traverse more than 190 miles to deliver to 272 boxes. Fairview has two rural routes, one running 82 miles with 157 delivery stops, and another running 100 miles with 212 stops. Montana communities know their mail carriers well, and warn them of rough patches on the roads, provide air for a low tire, and readily give other forms of assistance. Local post offices form the center of towns in Montana, large and small. They receive and distribute everything from live chicks to prescription medication, hard-earned checks, census forms, and ballots. The Postal Service is vital to Indian reservations, providing a critical link to supplies available only from outside the community. Of special relevance here, the Postal Service also delivers the state government's mail, encompassing communications ranging from unemployment insurance materials to placement and reunification requests for children in foster care. Hampering state agencies' ability to communicate with constituents by mail threatens their ability to perform essential functions.

Only a preliminary injunction can avert the irreparable harm being inflicted on Montana's state agencies and the Montanans they serve. This Court should enjoin the Postal Service and Postmaster General Louis DeJoy from carrying out their *ultra vires*

policy changes implemented in violation of federal law, 39 U.S.C. § 3661, and from making any further changes that would impact the timely delivery of mail in Montana. The Governor further requests that the Court order DeJoy and the Postal Service to reverse their illegal actions and reinstate policies and machines in compliance with their statutory mandate to work to deliver mail on time, everywhere, thus restoring the status quo to the greatest extent possible.

## II. FACTUAL BACKGROUND

Louis DeJoy became the 75th Postmaster General in May 2020, selected by the U.S. Postal Service's Board of Governors, whose members were appointed by the President. Compl. ¶27. In June, DeJoy instituted broad operational changes, which he described as "transformative" changes with "unintended consequences that impacted [the Postal Service's] overall service levels." *PMG addresses restructuring*, Postal Times (Aug. 13, 2020), at 2 (Ex. E).

Included among these "transformative" changes are several actions that have delayed the mail and reduced the level of service ordinarily provided by the Postal Service. These actions include: (i) eliminating overtime pay for certain postal workers; (ii) instructing carriers to leave mail behind, rather than deliver it, in certain circumstances; (iii) decommissioning letter sorting machines; (iv) removing mailboxes; (v) reducing operating hours; and (vi) changing how election mail is classified and charged. *See Mandatory Stand-Up Talk: All Employees* (July 10, 2020) (Ex. A);

Letters from Thomas J. Marshall to States, *Re: Deadlines for Mailing Ballots* (July 29, 2020) (Ex. B); *Postmaster General Louis DeJoy's Opening Remarks for the USPS Board of Governors Aug. 7 Meeting* (Aug. 7, 2020) (Ex. C); *Equipment Reduction* (May 15, 2020) (Ex. D); *PMG Expectations & Plan* (July 2020) (Ex. F).[1]

1. To begin, DeJoy eliminated overtime necessary to complete the day's work and obtain timely mail service, affecting hundreds of thousands of postal workers. *See Mandatory Stand-Up*, Ex. A; *PMG Expectations*, Ex. F; *see also* Roger Sollenberger, *Internal USPS memo appears to contradict postmaster general's testimony*, Salon.com (Aug. 21, 2020) ("DeJoy made the overtime decision" said Mark Dimondstein, president of the American Postal Workers Union), https://www.salon.com/2020/08/21/internal-usps-memo-appears-to-contradict-postmaster-generals-testimony/. Eliminating overtime increases stress on the postal system, especially as COVID-19 has forced thousands of postal workers to quarantine or remain home while sick. As of August 2020, nearly 10 percent of the 630,000 postal workers nationwide had contracted the virus. Jason Knowles & Ann Pistone, *USPS workers concerned agency isn't doing enough to protect essential workers from*

---

[1] *See also* Jacob Bogage, *Postal Service memos detail 'difficult' changes, including slower mail delivery*, Wash. Post (July 14, 2020), https://www.washingtonpost.com/business/2020/07/14/postal-service-trump-dejoy-delay-mail/; Aaron Gordon, *The Post Office Is Deactivating Mail Sorting Machines Ahead of the Election*, Motherboard (Aug. 13, 2020); Aaron Gordon, *Internal USPS Documents Outline Plans to Hobble Mail Sorting*, Motherboard (Aug. 14, 2020), https://www.vice.com/en_us/ article/pkyv4k/internal-usps-documents-outline-plans-to-hobble-mail-sorting.

*COVID-19*, ABC7 Chicago (Aug. 14, 2020), https://abc7chicago.com/usps-covid-illinois-postal-service/6360074/.

2. Next, carriers were instructed to leave mail behind on workroom floors or docks if collecting it would slow them down. *PMG Expectations*, Ex. F. Carriers were likewise told not to make additional trips to ensure timely distribution of letters and parcels and instead required to "return [from mail routes] on time" even if it would mean failing to complete deliveries for the day. *Id.* Traditionally, postal workers are trained never to delay mail; never to leave letters behind; and, when necessary, to make multiple delivery trips to ensure timely arrival. *See* Mary Pflum, *Concerned postal workers lay blame for delays squarely on recent overhauls*, NBC News (Aug. 17, 2020), https://www.nbcnews.com/news/us-news/concerned-postal-workers-lay-blame-delays-squarely-recent-overhauls-n1237011; Bogage, *Postal Service memos*, *supra* at 4 n.1. But DeJoy nevertheless wrote to employees, "if we cannot deliver all the mail due to call offs or shortage of people and you have no other help, the mail will not go out[.]" *PMG Expectations*, Ex. F. Testifying before Congress, he justified the "leave mail behind" policy by referring to an Office of the Inspector General report that 20 percent of transportation trips left mail processing facilities late. *Protecting the Timely Delivery of Mail, Medicine & Mail-in Ballots*, U.S. House Comm. on Oversight & Reform (Aug. 24, 2020), https://bit.ly/2EsSDPW, video at 39:40 ("House Testimony").

3. At the same time, 671 machines the Postal Service uses to organize and sort mail have been or will be removed from dozens of cities across America, effectively retiring 10 percent of the Postal Service's sorting machines between June and September of 2020. *See* Letter from Rickey R. Dean to Mark Dimondstein (June 17, 2020) (Ex. G). The machines in question can label and sort tens of thousands of paper mail items including letters, bills, and ballots each hour. *Id.* Together the 671 machines could sort more than 21 million pieces of mail per hour. Jacob Bogage & Christopher Ingraham, *Here's why the Postal Service wanted to remove hundreds of mail-sorting machines*, Wash. Post (Aug. 20, 2020), https://www.washingtonpost.com/business/2020/08/20/postal-service-mail-sorters-removals/. When up and running, these machines allow carriers to spend more time delivering mail instead of organizing it. *Id.* Postal workers have reported witnessing machines that cost millions of dollars being "destroyed or thrown in the dumpster." Gordon, *Internal USPS Documents, supra* at 4 n.1.

According to the Postal Service's Equipment Reduction plan, the Postal Service had planned to decommission 969 total machines this fiscal year, the majority slated for removal by September 30, 2020. *Equipment Reduction*, Ex. D; *see also* Gordon, *supra* at 5. DeJoy testified that he does not intend to bring any machines back online that have been removed, even if local facilities request replacements. House Testimony, video at 3:22:10.

Montana cities—Missoula, Great Falls, and Billings—are among those where sorting machines have already been disassembled. Tom Lutey, *More details emerge about dismantled mail equipment in Montana*, Billings Gazette (Aug. 21, 2020), https://billingsgazette.com/news/state-and-regional/govt-and-politics/more-details-emerge-about-dismantled-mail-equipment-in-montana/article_8edeed28-da9c-5248-866a-8f229eb972a8.html; Maritsa Georgiou, *Leaked photos show disassembled USPS machines in Montana*, NBC Mont. (Aug. 20, 2020), https://nbcmontana.com/news/local/leaked-photos-show-disassembled-usps-machines-in-montana.

4. The Postal Service has confirmed that dozens of mailboxes were removed in parts of New York, Pennsylvania, Oregon, and Montana—including in Bozeman, Glendive, Helena, Lewistown, Livingston, Manhattan, and Shelby. Georgiou, *Leaked photos*, *supra* at 6. In response to backlash, DeJoy suspended some of the operational changes, including further mailbox removal, and the reduction in post office retail hours, as well as the decommissioning of mail processing and sorting machines. *Postmaster General Louis DeJoy Statement*, USPS, (Aug. 18, 2020) (Ex. K), https://bit.ly/320luE4.

Regardless, postal workers have reported that mail is piling up in their offices, backing up mail nationwide. Luke Broadwater, *Crisis Ripples Across Nation as Election Looms*, NY Times (Aug. 18, 2020), https://www.nytimes.com/

2020/08/15/us/post-office-vote-by-mail.html. This presents a notable problem for medication delivery. Before the COVID-19 pandemic, the Postal Service handled 4 million prescription shipments a day, totaling about 1.2 billion shipments each year. Paige Pfleger, *Postal Service Slowdowns Cause Dangerous Delays in Medication Delivery*, Nat'l Pub. Radio (Aug. 25, 2020), npr.org/sections/health-shots/2020/08/25/905666119/postal-service-slowdowns-cause-dangerous-delays-in-medication-delivery. Since the pandemic began, even more people have begun to rely on the mail for prescriptions. *Id.* Five percent of all Americans reported a delay associated with a mailed medication delivered during the week of August 18—that is twenty-five percent of those who expected a prescription in the mail. Chris Jackson & Mallory Newall, *Most Americans hopeful COVID-19 will be under control in six months, yet see federal government as making things worse*, Ipsos (Sept. 1, 2020), https://www.ipsos.com/en-us/news-polls/axios-ipsos-coronavirus-index. Montanans rely on mail-order prescriptions more than the average American, and vulnerable residents depend on the service. Pfleger, *supra* at 7.

5. Finally, the Postal Service has warned state elections officials that it will no longer treat election mail as First-Class as a matter of course and recommended that states pay First-Class postage to ensure timely delivery. *See* Marshall Letters, Ex. B (noting that "specific transit times ... cannot be guaranteed" and recommending that "election officials use First-Class Mail to transmit blank ballots and allow 1 week for

delivery to voters," adding that "Using Marketing Mail will result in slower delivery times."). First-Class mail ordinarily has a service standard of 1–3 days, while Marketing Mail lands at 3–10 days. *Service Performance of Election & Political Mail During the 2018 Midterm & Special Elections*, USPS Office of the Inspector General, at 1 (Nov. 4, 2019) (Ex. H). Typically, the Postal Service has processed and delivered election mail as First-Class regardless of its paid class of service. *Id.* During the 2018 elections, 95.6 percent of election and political mail was delivered within 1–3 days, very near the Postal Service's overall goal of delivering 96 percent of First-Class mail in that time frame. *Id.* Election mail was thus processed as First-Class mail. *Id.* Changing this policy nearly triples the price tag per ballot—20 cents for nonprofit Marketing Mail versus 55 cents for First-Class postage—in states conducting elections by mail.

In Montana, 46 of 56 counties opted to use mail-in ballots for the November general election, in conjunction with expanded early voting opportunities. *Montana Counties submitting a Mail Ballot plan for the 2020 General Election*, Secretary of State Corey Stapleton (Sept. 4, 2020) (Ex. I); *Directive providing for measures to implement the 2020 November general election safely* (Aug. 6, 2020) (Ex. J). Concerns are growing nationwide that policy changes delaying postal service operations will affect delivery of mail-in ballots in November. *See* Adam Clark Estes, *What's wrong with the mail*, Vox (Aug. 18, 2020), https://www.vox.com/recode/2020/8/7/21358946/postal-service-mail-delays-election-

trump-mail-in-ballots; Jacob Bogage, *Trump says Postal Service needs money for mail-in voting, but he'll keep blocking funding*, Wash. Post (Aug. 12, 2020), https://www.washingtonpost.com/business/2020/08/12/postal-service-ballots-dejoy/.

6. The reported delays are real. Montanans are experiencing them. *See* Declaration of Leone Cloepfil ¶¶7–9; Declaration of Monica Sayler ¶¶3–4. Monica Sayler of Billings described an eBay order that took 39 days to arrive at her home. Sayler Decl. ¶3. Loene Cloepfil of Fort Benton faced late fees for the first time in years when she mailed her credit card bill payment, only to discover it had not been received after twenty days. Cloepfil Decl. ¶¶6–7. Cloepfil has no computer or internet access. *Id.* ¶3. She has relied on the Postal Service as a principal means of communications for over 70 years. *Id.* ¶4. She intends to vote by mail but worries that her "vote will not count because the mail cannot be relied on." *Id.* ¶10. The long delay Sayler recently experienced has likewise caused her "to lose confidence in the Postal Service's ability to deliver mail on time." Sayler Decl. ¶5.

Despite DeJoy's claim that he has suspended implementation of policy changes, the Postal Service has not expressly backtracked on many of its decisions, including the order to leave mail behind, and the decommissioning of certain machines with scheduled removal dates. *Postmaster General Statement*, Ex. K. These choices necessarily affect service nationwide. *See* Broadwater, *supra* at 8; Aaron Gordon, *The Post Office's Great Mail Slowdown Is Hurting Small Businesses*, Motherboard (Aug.

4, 2020); https://bit.ly/2R0Kbde. In spite of efforts to keep postal workers from talking to press, Aaron Gordon, *USPS Warns Employees Not to Speak to Press*, Motherboard (Aug. 20, 2020), https://www.vice.com/en_us/article/k7qypz/usps-warns-employees-not-to-speak-to-press, some have spoken out, reporting that even after DeJoy purportedly suspended implementation of changes, certain recent mandates have not been reversed, or have been changed anew, causing confusion. Mary Pflum, *Despite DeJoy's vows to halt changes, serious problems persist, postal workers say*, NBC News (Aug. 28, 2020), https://www.nbcnews.com/politics/2020-election/despite-dejoy-s-vows-halt-changes-serious-problems-persist-postal-n1238666. One union manager in Puget Sound explained that trucks normally leave up to 15 minutes after their scheduled departure to ensure all mail is gathered, but are now being told to leave no matter what, "even if there are live animals in 100 degrees, sitting on that dock," which means that "crickets and worms, chicks, and all kinds of live animals that are shipped through the mail ... bake." *Id.* "These animals used to get top priority. We never used to leave them. The agricultural people depend on us." *Id.* These changes necessarily impact mail in Montana as well.

For state agencies and the Montanans they serve, mail slowdowns can be ruinous.

The Department of Public Health and Human Services (DPHHS) relies on the mail for "routine communication with kinship and foster parents." Declaration of

Erica Johnston ¶4. Mail delays subvert DPHHS's "ability to meet the needs of vulnerable children, including the provision of diapers, formula, food, and clothing" because "[m]any foster families ... do not use direct deposit or have bank accounts." *Id.* Moreover, efforts "to reunify families—including referrals to needed services, arrangements for safe visitation, and notice of critical meetings or hearings that impact parental rights and reunification—can be frustrated or delayed if mail services are delayed." *Id.* For the agency more broadly, "[i]ndividuals in rural and frontier communities, elderly and disabled individuals, and residents of Montana's eight tribal nations particularly rely on the mail system to received critical communications and notices ... because of gaps in accessibility or rural broadband deficits." *Id.* ¶6. DPHHS "communications deal in subjects that require action in days—not weeks or months." *Id.*

The Montana Department of Revenue "provides certified values for all Montana properties to 1,400 taxing jurisdictions across the state annually," resulting in local and state property taxes of about $1.7 billion. Declaration of Eugene Walborn ¶5. Such information gathering is extremely time sensitive. *Id.* "Many rural property owners must or insist on relying on the Postal Service for conducting the basic and necessary activity of managing their statutory tax obligations." *Id.* ¶6. Delayed mail delivery can interfere with this and other agency obligations. *Id.* ¶¶5, 10.

Montana's Department of Labor and Industry (DLI) relies on the Postal

Service in interactions with "roughly one third of the adult population of Montana through its legislatively mandated responsibilities to provide" licensing, permitting, and standard setting; delays in performing these essential functions can prevent a business from operating to devastating consequence. Declaration of Brenda Nordlund ¶¶10. DLI also administers unemployment insurance benefits and relies on the mail to serve Montanans with claims-processing materials. *Id.* ¶¶5–8. Since March 15, DLI has "mailed 378,265 notices to claimants and employers." *Id.* ¶6. "Any delay in claim processing causes uncertainty for claimants and employers." *Id.* ¶7. Indeed, the Governor's Citizens' Advocate recently worked with a constituent who drove from Bozeman to Helena upon receiving DLI paperwork that was so delayed in transit that it required a response within two days' of receipt. Declaration of George Wolcott ¶3. Both the Governor's Office and the constituent expended resources to ensure timely filing of his materials and were compelled interact in-person, placing all involved at an increased risk for contracting and spreading COVID-19. *Id.* ¶4.

The COVID-19 pandemic has shut down cities, counties, and states, making communication by mail inordinately valuable and even lifesaving. Montanans vulnerable to serious complications from COVID-19 are especially reliant on the mail. Many Montanans fall in this category: indeed, nearly 20 percent of Montanans are

over age 65.[2] Compl. ¶54. In fact, half of the state's population is 40 or older, making Montana the 9th oldest in the nation. *Id.* COVID-19 also disproportionately affects Native American communities. *Id.* ¶¶61, 62. Several tribes in Montana have implemented protective measures that are stricter than statewide measures to protect their members. *Id.* ¶60. Under these circumstances, reliable and on-time mail delivery is profoundly important.

## III.  LEGAL STANDARD

"The purpose of a preliminary injunction is to preserve the status quo and prevent the 'irreparable loss of rights' before a final judgment on the merits." *Native Ecosyts. Council v. Marten*, No. 18-cv-87-M-DLC, 2018 WL 3178145, at *1 (D. Mont. June 27, 2018) (citing *Textile Unlimited, Inc. v. A. BMH & Co.*, 240 F.3d 781, 786 (9th Cir. 2001); *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1130–31 (9th Cir. 2006)).

To obtain a preliminary injunction, the plaintiff must show: (1) a likelihood of success on the merits, (2) a likelihood that the plaintiff will suffer irreparable harm in the absence of preliminary relief, (3) that the balance of the equities tips in the plaintiff's favor, and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "[S]erious questions going to the merits

---

[2] The Pew Research Center has observed that about six in ten Americans over age 65 do not own smartphones. Monica Anderson & Andrew Perrin, *Tech Adoption Climbs Among Older Adults* (May 17, 2017), https://www.pewresearch.org/internet/2017/05/17/technology-use-among-seniors/.

and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). "Also, when the federal government is a party, the balance of the equities and public interest factors merge." *Doe #1 v. Trump*, 414 F. Supp. 3d 1307, 1318–19 (D. Or. 2019) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073 (9th Cir. 2014)). Governor Bullock easily satisfies all four elements here.

## IV.   ARGUMENT

### A. As DeJoy and the Postal Service have acted unlawfully, Governor Bullock is likely to succeed on the merits.

DeJoy's changes to the provision of postal services unequivocally violate federal law. Since becoming Postmaster General, DeJoy has announced and implemented "transformational" changes that undermine the provision of postal services. Because he lacks authority to make such changes without Postal Regulatory Commission review pursuant to 39 U.S.C. § 3661, the changes violate federal law. Consequently, not only has the Governor been denied his statutory right to participate in the Postal Regulatory Commission's review process, but an unconscionable delay in mail delivery that contravenes 39 U.S.C. § 101, has occurred, harming Montanans, impairing essential state government functions, and impeding the Governor's response to the COVID-19 emergency. The Governor is exceedingly likely to succeed on the merits of his claims.

The modern United States Postal Service was organized under the Postal Reorganization Act of 1970 (PRA), Public Law 91-375, 84 Stat. 719, as amended by the Postal Accountability and Enhancement Act of 2006 (PAEA), Public Law 109-435, 120 Stat. 3198, "as an independent establishment of the executive branch of the Government of the United States, under the direction of a Board of Governors, with the Postmaster General as its chief executive officer." 39 C.F.R. § 1.1. It has, "as its basic function ... the obligation to provide postal services to bind the Nation together." 39 U.S.C. § 101(a). The Postal Service "shall provide *prompt, reliable, and efficient services to patrons in all areas* and shall render postal services to all communities." *Id.* (emphasis added). Congress requires the Postal Service to "give the highest consideration to the requirement for the most expeditious collection, transportation, and delivery of important letter mail." *Id.* § 101(e). Congress has thus made timely mail delivery a paramount objective of the Postal Service.

In keeping with the Postal Service's obligation to "develop and promote adequate and efficient postal services," *id.* § 3661(a), accountable to the public, Congress requires that the Postal Service obtain review from the Postal Regulatory Commission ("Commission") *before* implementing decisions that impact its service:

> When the Postal Service determines that there should be a change in the nature of postal services which will generally affect service on a nationwide or substantially nationwide basis, it shall submit a proposal, within a reasonable time prior to the effective date of such proposal, to the Postal Regulatory Commission requesting an advisory opinion on the change.

*Id.* § 3661(b). When a proposal is submitted, the Commission must allow enough time to give "an opportunity for a hearing on the record [governed by the Administrative Procedure Act]" where participants should include "the Postal Service, *users of the mail*, and an officer of the Commission who shall be required to represent the interests of the general public." *Id.* § 3661(c) (emphasis added). The Commission's rules require the Postal Service to file proposals "not less than 90 days before the proposed effective date of the change in the nature of postal services involved." 39 C.F.R. § 3020.112.

To trigger section 3661, "three factors must coexist." *Buchanan v. U.S. Postal Serv.*, 508 F.2d 259, 262 (5th Cir. 1975). "First, there must be a 'change'"; second, that "change must be 'in the nature of postal services'"; and third, the "change must affect service 'on a nationwide or substantially nationwide basis.'" *Id.* at 262–63. In *Buchanan*, the Fifth Circuit affirmed the district court's entry of a preliminary injunction where plaintiffs established that the Postal Service had chosen to consolidate district offices and use a retail analysis program to determine the best location for certain branches without following the strictures of Section 3661. *See id.* at 266–67. Notwithstanding several factual disputes, the court held these comparatively modest changes to establish both a "substantial threat of irreparable injury," and a "sufficient showing of substantial likelihood that plaintiffs would prevail on the merits," *id.* at 266. Here, a plethora of evidence unearthed by the national

news media demonstrates that DeJoy's "transformative" changes fundamentally alter the nature of the postal service and have nationwide effects. *See, e.g.*, Pflum, *supra* at 13. Thus, the changes in question, as well as any follow-on actions changing Postal Service operations, are subject to Section 3661's procedural requirements.

Certain documents that became public on July 14, 2020, establish the Postal Service's intent to make significant, national operational changes. The *PMG's Expectations and Plan* discusses eliminating overtime, restrictions on certain letter carrier activities, and other changes assertedly aimed at cutting costs. *PMG Expectations*, Ex. F. The *Mandatory Stand-Up Talk: All Employees* document, subtitled, "Pivoting For Our Future," directs postal workers everywhere to allow only limited carrier trips out of processing centers to deliver mail, stating "we may see mail left behind or mail on the workroom floor or docks." *Mandatory Stand-Up,* Ex. A.

Altering worker training and practices nationwide constitutes a "major change[] in postal services [that] should not be contemplated without public participation in the decision-making process." *See Shane v. Buck*, 658 F. Supp. 908, 911 (D. Utah 1985); Bogage, *Postal Service memos*, Bogage, *supra* at 4 n.1 ("Traditionally, postal workers are trained not to leave letters behind and to make multiple delivery trips to ensure timely distribution of letters and parcels."); *see also Buchanan*, 508 F.2d at 265–66 (describing testimony indicated that two programs existed to decide which postal facilities would be relocated and altered and affirmed a preliminary injunction

preventing the program from going forward). The nationwide changes are described as "[p]ivoting" to "make immediate, lasting, and impactful changes in our operations and in our culture." *Mandatory Stand-Up*, Ex. A. The instructions contemplate "delayed mail volumes," and claim that the "initial step in our pivot is targeted on transportation," but is part of "the ongoing pivot, which will have a number of phases." *Id.*

Unsurprisingly, reports of widespread delays abound.[3] Veterans are documenting weeks-long delays in receiving medication. *VA Prescription Refill & Tracking*, Dep't of Veterans Affairs, https://bit.ly/3bIb7Z7; James Clark, *How the battle over the US Postal Service is costing veterans dearly*, Task & Purpose (Aug. 18, 2020), https://taskandpurpose.com/news/postal-service-veteran-medication-delays. These delays have reached Montana. *See generally* Cloepfil Decl.; Sayler Decl.; Wolcott Decl.

These policy changes go to the nature of postal services and have nationwide impact. And, to the extent Defendants claim they have desisted implementing

---

[3] *See, e.g.*, Andrew Brown & Andrew Miller, *Some SC Businesses Say They are Experiencing Delays Because of US Postal Service Changes*, The Post & Courier, (Aug. 14, 2020), https://www.postandcourier.com/business/some-sc-businesses-say-they-are-experiencing-delays-because-of-us-postal-service-changes/article_e8716d38-dd6d-11ea-9c9e-a79f1c82a446.html; Ron Trevino, *USPS Delivery Delays Leave 82-year-old Texas Man Without Heart Medication for a Week*, WBNS (Aug. 17, 2020), https://www.10tv.com/article/news/nation-world/usps-delays-leave-humble-man-without-heart-medication/285-49815193-bf3d-4b45-a1a5-b0afe16236f7; Ginna Roe, *Utah Diabetic Waiting for More Than a Week For Supplies By Mail*, KUTV, (Aug. 17, 2020); https://kutv.com/news/local/utah-diabetic-waiting-more-than-a-week-for-supplies-by-mail.

operational changes, the status of existing orders is unclear and potentially contradictory. *See, e.g.*, Pflum, *supra* at 13; House Testimony, video at 3:35:47–3:36:16 (asked whether the Postal Service would treat Election Mail as First-Class, DeJoy answered vaguely, saying, "First-Class mail is a classification of mail, and then we're talking about a physical process. So we could advance mail in front of First-Class, but we'd still not call it First-Class mail"). Moreover, DeJoy did not suspend all operational changes; for example, he did not address the policy requiring postal workers to leave mail behind—and he has since confirmed that this policy remains in place.[4] This is not a return to the lawful status quo. Nor has DeJoy taken any steps toward proposing "transformational" changes to the Postal Regulatory Commission before resuming their implementation following the November presidential election.[5]

No one contests that DeJoy and the Postal Service failed to undertake the process described in Section 3661. By failing to do so before executing the described policy and operational changes, Defendants have violated Section 3661.[6] In addition, by ignoring the obligation to give highest consideration to efficient processing,

---

[4] *See Postmaster General Statement*, Ex. K.; House Testimony, video at 1:44:20; 3:08:59; 3:49:09; 4:46:57.

[5] The Commission's docket can be searched at https://www.prc.gov/dockets/search. A search as of this writing reveals no "nature of service" cases filed with the Commission in 2020.

[6] Unlike the circumstances in *LeMay v. U.S. Postal Service*, 450 F.3d 797 (8th Cir. 2006), where the plaintiff tried to convert a "claim of inadequate postal service" into a contract claim, *id.* 800–801, the claim against the Postal Service here—for failure to act in accordance with Section 3661—is not substantive. The point is not delay in itself, but the execution of policy changes that cause nationwide delays without adhering to procedural requirements.

transporting, and delivering of important letter mail, Defendants have acted *ultra vires* because their actions directly contravene statutory mandates. *See, e.g.*, 39 U.S.C. § 101. The clear nature of the statutory violations makes it likely that Governor Bullock will succeed on the merits. At a minimum, there are—irrefutably—"serious questions going to the merits." *Cottrell*, 632 F.3d at 1135.

## B. Without preliminary relief, Governor Bullock and the State agencies he oversees will suffer irreparable injuries.

With every passing day, state agencies are unable to timely communicate with Montanans. Unpredictable, unprecedented mail delays can cause grievous, irreparable harm—loss of income meant for groceries, delay of a child's placement in a stable home, loss of a home to foreclosure—and there is no doubt that delay has begun and will continue to wreak havoc on state infrastructure. Governor Bullock suffers direct irreparable injury because he relies on the mail to enable Montanans to faithfully abide by social distancing requirements and to vote without endangering themselves and their neighbors as the COVID-19 crisis continues. Unless the Court enjoins changes DeJoy has made, these injuries will persist and worsen.

Congress plainly adopted Section 3661 to ensure the Postal Service would not unilaterally reduce its services to the American public without first obtaining external input. By ignoring Section 3661 and adopting changes that go to the essence of postal services, DeJoy and the Postal Service deprive users of the mail—including Montanans, Montana state agencies, and Governor Bullock—their statutory right to comment on

the many ways these "transformational" changes will harm them. Had DeJoy and the Postal Service followed the law, the Governor could have submitted comment to the Postal Regulatory Commission on the many ways these changes would irreparably harm the interests of the agencies he oversees and Montanans generally.

As discussed, DPHHS often communicates by mail with the families of children in its care. Johnston Decl. ¶4. In those heartbreaking circumstances where a child must be removed from their home, DPHHS must work to place the child with an extended family member, clan member, or tribal member whenever possible. *Id.* DPHHS must often resort to mail to contact placements, many of whom lack phone or internet access. *Id.* ¶6. Delays in mail delivery may thus mean delays in placement; "repercussions for such delays can be catastrophic in the lives of children already facing significant instability" and constitute irreparable harm. *See, e.g., Doe by Johanns v. N.Y.C. Dep't of Social Servs.*, 670 F. Supp. 1145, 1185 (S.D.N.Y. 1987) ("Given the inadequate conditions which characterize the night-to-night program, and the deterioration suffered by repeat overnighters, which likely cause a violation of the children's due process rights, we find that plaintiffs have met the irreparable harm requirement for even mandatory relief.").

Food stamps, Medicaid coverage, and other forms of public assistance are also delayed for those without regular access to the phone or internet, aggravating the effects of poverty or difficult circumstances. *See Islam v. Cuomo*, No. 20-cv-2328,

2020 WL 4336393, at *6 (E.D.N.Y. July 28, 2020) ("It has long been recognized that protracted denial of subsistence benefits constitutes irreparable harm") (collecting cases). DLI provides unemployment insurance, which is of special importance during the COVID-19 pandemic, given the associated increase in unemployment from 3.5 percent in February 2020 to 11.9 percent in April. *Cf. City of Beaver Falls v. Econ. Dev. Admin.*, 439 F. Supp. 851, 854–55 (W.D. Pa. 1977) (reasoning that Congress intended to provide unemployment relief in critical areas "in the earliest possible time" so that to enjoin payment to a school district would be contrary to the public interest). To provide unemployment insurance, DLI relies on the Postal Service to communicate effectively through numerous statutory steps. Nordlund Decl. ¶¶7, 8.

Each day that vital communications and materials are delayed causes irreparable harm and may cause a cascade of injury, despite the State's best efforts at offering protections. *See, e.g., Amato v. Elicker*, No. 20-cv-464, 2020 WL 2542788, at *6 (D. Conn. May 19, 2020) ("Courts have found irreparable harm when plaintiffs allege that their business would be shut down entirely if relief is not granted.") (collecting cases); *Am. Commercial Lines, LLC v. Ne. Maritime Inst., Inc.*, 588 F. Supp. 2d 935, 949 (S.D. Ind. 2008) ("[L]egal remedies are inadequate if damages would be inadequate to relieve the wrong."). Delay may also impede timely assessment of property taxes and harm taxing jurisdictions that rely on the Montana Department

of Revenue to effectively operate. Walborn Decl. ¶5. And yet, in Montana and across the country, mail is piling up.

The Governor also relies on mail communications with constituents, who write with complaints, compliments, and requests for assistance. Wolcott Decl. ¶8. Delays in these communications mean constituents may not receive timely assistance from the Citizen's Advocate or others within the Governor's Office. *Id.* Governor Bullock takes very seriously the obligation to assist Montanans facing challenges of all sorts, pandemic related or not, and cannot effectively perform this duty without the timely delivery of mail. *See id.* ¶9.

Finally, Defendants' unlawful actions, if not remediated, will irreparably obstruct Governor Bullock's management of the COVID-19 pandemic. The Governor is charged with the duty to see that the laws of Montana are faithfully executed, and is vested with the authority to manage emergencies. Mont. Const. art. VI §§ 4, 13; Mont. Code Ann. §§ 10-3-101(4), 10-3-104, 10-3-305. Pursuant to that authority, the Governor has adopted measures that encourage physical distancing to limit the spread of infection,[7] increasing the public's dependence on the mail. Moreover, consistent with recommendations from the Centers for Disease Control & Prevention, *see Considerations for Election Polling Locations & Voters*, CDC.gov

---

[7] The Governor's executive directives related to the pandemic are located at https://covid19.mt.gov/joint-information-center.

(updated June 22, 2020) (Ex. L), the Governor authorized counties to conduct all-mail ballots for the general election process, Aug. 6 Directive, Ex. J. The opt-in deadline for conducting a mail-ballot election has passed. *See* Mont. Code Ann. § 13-19-205 (requiring submission of plans for mail-ballot elections 60 days before the election). Defendants' actions undermine the Governor's efforts to limit contagion during a critical period of the pandemic after local election officials for the vast majority of counties have already committed to mail balloting for the general election. *Montana Counties*, Ex. I.

## C. The harms that the Governor and State agencies face far outweigh any harm to the Postmaster General and Postal Service and a preliminary injunction is in the public interest.

Preliminary relief is in the public interest. Without reliable mail, the Governor and Montana state agencies cannot perform their essential functions and provide services that have become indispensable as a result of a global pandemic and in the context of a federal election to be conducted extensively by mail.

Any minor financial or operational harm Defendants may suffer as a result of a preliminary injunction requiring them to cease actions taken unlawfully is of no account where the challenged actions were taken outside the scope of the Postal Service's statutory authority. Even if these were significant harms, they would pale in comparison to the injury underway that will continue to inflict harm on state government and Montanans across the state, especially children in foster care, the

elderly, the unemployed, and those who live in rural ranching and farming communities or on tribal land. *Cf. Lofton v. Dist. of Columbia*, 7 F. Supp. 3d 117, 125 (D.D.C. 2013) ("The public interest lies in the proper enforcement of the IDEA and in securing the due process rights ... provided by statute, and this public interest out weigh[s] any asserted financial harm to [D.C. Public Schools].") (quotation marks omitted); *Greenpeace Found. v. Mineta*, 122 F. Supp. 1123, 1139 (D. Haw. 2000) ("Financial harm is not the sort of 'unusual circumstance' contemplated ... which justifies a court's refusal to enjoin [National Environmental Policy Act] violations.").

Moreover, the Postal Service can have no interest in acting without public input where congressionally charged. *Cf. Int'l Bhd. of Teamsters v. Kalitta Air, LLC*, No. 15-cv-13527, 2015 WL 6561715, at *5 (E.D. Mich. Oct. 30, 2015) ("[U]nder the [Railroad Labor Act], a district court may enjoin a violation of the status quo pending completion of the required procedures, without the customary showing of irreparable injury.") And, the Postal Service cannot argue that subverting its central function to "provide prompt, reliable, and efficient services to patrons in all areas and shall render postal services to all communities," 39 U.S.C. § 101(a), is conceivably in the public interest. A pandemic is no time to make major changes to postal services without public input.

At least seven other complaints have recently been filed against the Postmaster General and the Postal Service.[8] States, nonprofit organizations, and many others have pointed out the extreme harms inflicted by Defendants' unlawful actions. These complaints are important indicators of the public interest.

The equities and public interest plainly favor Governor Bullock.

## V. CONCLUSION

DeJoy and the Postal Service made unilateral and system-wide changes to mail delivery in this country that are not only unlawful, but that threaten the safety, health, and livelihoods of Montanans in the middle of a pandemic while impeding the state in delivering essential services. There is no doubt that DeJoy and the Postal Service failed to follow the proper process in effecting these substantial changes. Given the clear nature of the statutory violation, Governor Bullock is likely to succeed on the merits. Irreparable harm will result without preliminary relief, and the balance of the equities and the public interest both tip heavily in Governor Bullock's favor. Accordingly, the Court should grant Governor Bullock's motion for preliminary equitable relief, declare unlawful DeJoy's "transformational changes"; enjoin

---

[8] *Jones v. U.S. Postal Serv.*, No. 20-cv-6516, Dkt. 1 (S.D.N.Y. Aug. 17, 2020); *Nat'l Urban League v. DeJoy*, No. 1:20-cv-2391, Dkt. 1 (D. Md. Aug. 18, 2020); *Richardson v. Trump*, No. 20-cv-02262, Dkt. 3-1 (D.D.C. Aug. 18, 2020); *State of Washington et al. v. Trump et al.*, No. 1:20-cv-03127, Dkt. 1 (E.D. Wash. Aug. 18, 2020); *NAACP v. U.S. Postal Serv.*, No. 20-2295, Dkt. 1 (D.D.C. Aug. 20, 2020); *Pennsylvania v. DeJoy*, No. 2:20-cv-4096, Dkt. 1 (E.D. Pa. Aug. 21, 2020); *New York v. Trump*, No. 20-cv-2340, Dkt. 1 (D.D.C. Aug. 25, 2020).

Defendants from implementing these or further changes in contravention of 39 U.S.C. § 3661 and 39 U.S.C. § 101; and require Defendants to reverse any changes already made. The Court should halt this unlawful attack on a 245-year-old institution.

Respectfully submitted,

*/s/ Rylee K. Sommers-Flanagan*

RAPHAEL GRAYBILL
Chief Legal Counsel
RYLEE SOMMERS-FLANAGAN
Deputy Legal Counsel
Office of the Governor
PO Box 200801
Helena, MT 59620-0801
Phone: (406) 444-3179

September 11, 2020

*Counsel for Governor Steve Bullock*

## CERTIFICATE OF COMPLIANCE

In accordance with Local Rule 7.1 of the Rules of Procedure of the United States District Court for the District of Montana, I certify the following concerning the Motion:

1. the document is double spaced except for footnotes and quoted and indented material;

2. the document is proportionally spaced, using Baskerville, 14 point font; and

3. the document contains 6,478 words, excluding the caption, certificates, and tables, as calculated by Microsoft Word.

Dated:        September 11, 2020

/s/ *Rylee K. Sommers-Flanagan*
Rylee K. Sommers-Flanagan

## CERTIFICATE OF SERVICE

I hereby certify that on September 11, 2020, I electronically filed this brief in support of Plaintiffs' motion for a preliminary injunction through this Court's CM/ECF system. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system, and have also sent notice of the filing by certified mail as a courtesy.

*/s/ Rylee K. Sommers-Flanagan*
Rylee K. Sommers-Flanagan